[Cite as *State ex rel. Silver v. Ohio Pub. Emp. Retirement Sys.*, 2017-Ohio-445.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. James R. Silver, | : | |
| Relator, | : | |
| v. | : | No. 15AP-864 |
| Ohio Public Employees Retirement System and | : | (REGULAR CALENDAR) |
| The City of Aurora, Ohio, | : | |
| Respondents. | : | |

### D E C I S I O N

Rendered on February 7, 2017

*Eric R. Fink,* for relator.

*Michael DeWine,* Attorney General, *John J. Danish,* and *Mary Therese J. Bridge,* for respondent Ohio Public Employees Retirement System.

*Reitz, Paul & Shorr,* and *Douglas K. Paul,* for respondent City of Aurora.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

TYACK, P.J.

{¶ 1} James R. Silver filed this action in mandamus seeking a writ of mandamus to compel the Ohio Public Employees Retirement System ("OPERS") to grant him credit with OPERS for the time he served the city of Aurora.

{¶ 2} In accord with Loc.R. 13(M) of the Tenth District Court of Appeals, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and briefed the legal issues. The magistrate then issued a

magistrate's decision, appended hereto, which contains detailed findings of fact and conclusions of law. The magistrate's decision includes a recommendation that we grant the relief requested by Silver.

{¶ 3} OPERS has filed objections to the magistrate's decision. The city of Aurora has also filed objections.

{¶ 4} Counsel for Silver has filed a memorandum in response. The case is now before the court for a full independent review.

{¶ 5} There is no debate that for six years James Silver served as an assistant law director and prosecutor for the city of Aurora. City ordinances were passed to enable him to serve in those capacities. The debate is whether his relationship with the city was that of an independent contractor or that of an employee who was qualified for membership in OPERS. Needless to say that question was not adequately addressed while Silver was serving the city. The normal contribution from Silver's pay was not withheld and the city's matching funds were not forwarded to OPERS.

{¶ 6} The Ohio Administrative Code, specifically Ohio Adm.Code 145-5-15(C), required a formal bilateral written contract delineating the rights, obligations, benefits, and responsibilities of the parties to exist during the six-year period Silver served the city for him to qualify for OPERS benefits. Silver and his counsel argue that the city ordinances passed to authorize his services constitute such an agreement. OPERS and the city of Aurora argue to the contrary. The words of the first ordinance are set forth in the magistrate's decision.

{¶ 7} The ordinance states that $10,000 payable in monthly installments shall serve as compensation in full, except for time spent trying jury trials. The ordinance does not mention retirement benefits, medical benefits or other forms of fringe benefits. The ordinance also does not indicate whether anyone is supposed to pay the Social Security Administration as a result of the income generated. Apparently, Silver was issued a Form 1099 by the city, not a W-2 form.

{¶ 8} Based upon the above, the Public Employees Retirement Board deemed Silver to have served under a personal service contract, which would bar him from participating in the OPERS system.

{¶ 9}   Our magistrate was not writing on a blank state when he addressed the issues in this case.  Our court is guided by our earlier case of *State ex rel. Columbus v. Public Emp. Retirement Bd.,* 10th Dist. No. 08AP-807, 2009-Ohio-6321.  The issues in *State ex rel. Columbus* are the same as in the present case.

{¶ 10} We feel compelled to follow our earlier case resolving the issues.  If the parties feel that our earlier case was wrong, they have an appeal as of right to the Supreme Court of Ohio.

{¶ 11} We, therefore, overrule the objections and adopt the findings of fact and conclusions of law contained in the magistrate's decision.  We issue a writ of mandamus to compel OPERS to enter a decision granting Silver public employee status from January 2, 1984 through December 31, 1989.

*Objections overruled; writ granted.*

**KLATT and BRUNNER, JJ., concur.**

KLATT, J., concurring.

{¶ 12}  I agree with the majority decision to grant a writ of mandamus based on this court's previous decision in *State ex rel. Columbus v. Pub. Employees Retirement Bd.*, 10th Dist. No. 08AP-807, 2009-Ohio-6321, wherein we held that the failure to delineate the rights, obligations, benefits, and responsibilities of the parties in the written employment agreement precludes a finding of a personal services contract.  However, I would also grant the writ for a second reason.

{¶ 13} Here, relator, by definition, was not employed pursuant to a personal services contract because no formal bilateral written contract existed between relator and the city.  The only written document reflecting the employment relationship between relator and the city is a city ordinance that authorizes his retention as an assistant law director and sets forth some employment terms.  As noted by relator, a city ordinance is not a formal bilateral written contract.  Without a formal bilateral written contract between relator and his employer, there is no personal services contract.  Former Ohio Adm.Code 145-5-15(C)(3) effective December 12, 1976 ("[e]mployed under a personal services contract means that an individual so employed would * * * (3) [b]e a party to a formal bilateral written contract delineating the rights, obligations, benefits and

responsibilities of both parties.").  For this additional reason, I agree with the majority decision to grant the requested writ of mandamus.

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

The State ex rel. James R. Silver,          :

         Relator,          :

v.          :          No.  15AP-864

Ohio Public Employees Retirement System   :          (REGULAR CALENDAR)
and
The City of Aurora, Ohio,          :

         Respondents.          :

---

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on September 12, 2016

---

*Eric R. Fink,* for relator.

*Michael DeWine,* Attorney General, *John J. Danish,* and *Mary Therese J. Bridge,* for respondent Ohio Public Employees Retirement System.

*Reitz, Paul & Shorr,* and *Douglas K. Paul,* for respondent City of Aurora.

---

### IN MANDAMUS

{¶ 14} In this original action, relator, James R. Silver, requests a writ of mandamus ordering respondent, Ohio Public Employees Retirement System ("OPERS"), to vacate its August 19, 2015 decision determining that, under former R.C. 145.03, relator was not a public employee eligible for OPERS membership while providing services to the City of Aurora for the period January 1, 1984 through December 31, 1989, and to enter a decision finding he was a public employee eligible for OPERS membership during the six-year period.

Findings of Fact:

{¶ 15} 1. On January 1, 1984, relator began the first of three consecutive terms as assistant director of law for the City of Aurora. Each two-year term involved appointment by the mayor and formal approval by council of the City of Aurora by passage of an ordinance. Only the first ordinance, passed January 3, 1984, is reproduced here. That ordinance provides:

> BE IT ORDAINED by the Council of the City of Aurora, Portage County and State of Ohio:
>
> Section 1. That the appointment by the Mayor of the City of Aurora of James R. Silver as Assistant Director of Law of said municipality for a period of two full years commencing January 1, 1984 through December 31, 1985 is hereby confirmed.
>
> Section 2. That the duties of said Assistant Director of Law shall be to represent: the City in all criminal prosecutions in any court of record; to advise the members of the Police Division with respect to the preparation of affidavits and other criminal matters; and any other related duties that may be prescribed by Council or the Director of Law. The appointment: may be terminated by either the City or the Assistant Director of Law upon thirty days notice.
>
> That the compensation of the Assistant Director of Law shall be Ten Thousand Dollars ($10,000.00) per annum, payable in monthly installments, which shall be compensation in full for all of said Assistant Law Director's services except for jury trials. Payment for jury trial services shall be at the rate of $40.00 per hour, and shall be billed and paid for separately.
>
> Section 3. This ordinance is hereby declared to be an emergency measure necessary for the immediate preservation of the public peace, health and safety; such necessity existing for the reason that the employment provided herein is needed for the proper running of an essential department of the City government; wherefore, this ordinance shall to [sic] into effect immediately upon its passage.

(Emphasis sic.)

{¶ 16} 2. By letter dated October 28, 2013, an OPERS "Employer Compliance Specialist" informed relator that he was an "independent contractor" while working as assistant law director for the City of Aurora and, therefore, he was not eligible for OPERS membership during the period January 1, 1984 to December 31, 1989.

{¶ 17} 3. By letter dated November 5, 2013, relator appealed the staff determination to OPERS' general counsel.

{¶ 18} 4. By letter dated March 31, 2014, OPERS' general counsel denied relator's request for OPERS membership. The letter explains:

> Upon my review of this matter, I find that you were providing services as an independent contractor during the period of January 1, 1984 through December 31, 1989 and are not eligible for OPERS membership for this service.
>
> **Background**
> You first began providing service to the City in January 1984. During the period in question, both parties acknowledge that you provided services pursuant to biennial City ordinances and that no OPERS contributions were remitted to the retirement system.
>
> **Law and Analysis**
> Ohio Administrative Code 145-5-15(C), the relevant law in effect during the period in question, provided that "[e]mployed under a personal service contract" means that an individual so employed would:
>
> (1) Does not appear on a public payroll;
>
> (2) Not be eligible for sick leave, vacation, hospitalization or other fringe benefits extended to "regular" employees.
>
> (3) Be a party to a formal bilateral written contract delineating the rights, obligations, benefits and responsibilities of both parties.
>
> Further, Ohio Revised Code Section 145.03 and Ohio Administrative Code 145-5-15, as they existed during the relevant time period, explicitly barred individuals providing services pursuant to personal service contracts on or after August 20, 1976 from contributing to OPERS.
>
> The record clearly demonstrates that each of the above requirements set forth in Ohio Admin.Code 145-5-15 has

been satisfied. During the period in question, you operated under biennial ordinances that outlined the rights, obligations and responsibilities of both parties. The record also demonstrates that you did not appear on the City's payroll and you were not eligible for any fringe benefits offered to City employees such as vacation or sick leave.

You were not covered by the City for insurance, unemployment compensation or workers' compensation.

As provided by the ordinances, your services were to provide legal representation of the City in all criminal prosecutions. As such, you were provided with materials related to those services such as police reports and case files. Your schedule was set in accordance with the Court's sessions. These factors are expected, given the nature of the legal services that you provided. The ordinances outlined the set rate of compensation, duration of services, and the requirement that you submit bills for payment, all of which are factors in an independent contractor relationship. You also indicated that another member of your law firm provided coverage in your absence and that you paid this individual, an element which further supports the existence of an independent contractor relationship.

Lastly, the affidavit of Shirley Ferris, the former bookkeeper and assistant to the managing partner of Christley, Herington & Pierce, states that payments for your services were made by the City to Christley, Herington & Pierce, the law firm with which you were a partner during your service with the City of Aurora. Ms. Ferris's affidavit supports the finding that you were not directly compensated by the City of Aurora. Rather, the City of Aurora issued payment to your law firm which in turn compensated you for the legal services that you provided to the City of Aurora.

* * *

**Conclusion**
The record clearly establishes that you provided services under the City's ordinances as an independent contractor during the relevant time period. As a result, you were not a public employee for these services and are not entitled to OPERS membership or service credit for this service.

{¶ 19} 5. Pursuant to Ohio Adm.Code 145-1-11, relator appealed the decision of general counsel to the Public Employees Retirement Board ("board").

{¶ 20} 6. Pursuant to Ohio Adm.Code 145-1-11(C), the board delegated its authority to hear the appeal to an independent hearing examiner prior to the board making its final decision on the appeal.

{¶ 21} 7. On October 29, 2014, a hearing examiner conducted a hearing which was recorded and transcribed for the record.

{¶ 22} 8. On February 11, 2015, the hearing examiner issued an 18-page "Report and Recommendation" ("R & R"). Beginning on page 12 of the R & R, the hearing examiner set forth 5 paragraphs of findings of fact. Paragraphs 1 through 4 provide:

> [One] James R. Silver ("Petitioner" or "Claimant") has been a licensed attorney in Ohio since 1980. Previous to 1984, Petitioner had a private law practice in which, among other things, he represented clients in criminal defense and traffic defense matters in the Kent (Ohio) Municipal Court. * * *
>
> [Two] Prior to 1984, Petitioner was a partner with the Aurora, Ohio law firm of Christley, Herington & Pierce. Beginning in 1984, Petitioner's law partner, Norm Christley, became the Law Director for the City of Aurora, Ohio ("Respondent"). He continued to partner in that law firm while serving as Assistant Law Director for Respondent during the subject period.
>
> [Three] Beginning on January 1, 1984 through December 31, 1989, Petitioner served as Respondent's Assistant Law Director. Respondent's City Council passed a series of three (3) municipal ordinances (Ord Nos. 1984-02, 1986-7, and 1988-2) during those periods confirming Petitioner's appointment as Assistant Law Director by Respondent's mayor, setting forth his duties, and establishing his compensation. * * * Other than the ordinances, there was no written agreement between Respondent and Petitioner regarding these services.
>
> [Four] As Assistant Law Director, Petitioner's duties included: prosecuted misdemeanor cases cited by Respondent's police department; attended/advised Respondent's Civil Service Commission; and attended Respondent's City Council meetings when the law director was not able. As Respondent's Assistant Law Director, Petitioner: was paid monthly by checks made payable to him

personally (and not his law firm); was not on the public payroll; was issued a Form 1099 each year; was provided no office, equipment or supplies by Respondent; had no deductions (fed./state taxes) from his payments; and he was not eligible for sick or vacation leave, health insurance, or other fringe benefits.

{¶ 23} 9. Beginning at page 14 of the R & R, the hearing examiner sets forth his conclusions of law in paragraphs (A) through (F). Paragraphs (A) through (D) provide:

A. During the relevant time period of this appeal (1984-1989), ORC § 145.03,[1] in pertinent part, expressly excluded persons "employed under a personal service contract" as public employees and participation in OPERS membership.

B. OAC § 145-5-15(C), as it existed during this time period, defined a person "employed under a personal service contract" as follows:

**§ 145-5-15. Interpretation of ORC Section 145.03 regarding personal service contracts.**

* * * *

(C) "Employed under a personal service contract" means that an individual so employed would:

(1) Not appear on a public payroll.

(2) Not be eligible for sick leave, vacation, hospitalization, or other fringe benefits extended to "regular" employees.

(3) Be a party to a formal bilateral written contract delineating the rights, obligations, benefits and responsibilities of both parties.

* * *

C. Upon reviewing Petitioner's arrangement with Respondent from 1984 to 1988 [sic], it is clear that this arrangement met all of the criteria under OAC § 145-5-15(C) for a person employed under a personal service. Without question, Petitioner did not appear on Respondent's public payroll nor was he eligible for the sick or vacation leave, hospitalization coverage, or other fringe benefits extended to

---

[1] ORC § 145.03, as amended, effective August 20, 1976.

Respondent's public employees. * * * Further, although there does not exist a written agreement signed by both Petitioner and Respondent outlining Petitioner's duties as Assistant Law Director, the three (3) municipal ordi[n]ances are clear that Respondent's City Council are the result of and confirming Petitioner's appointment by Respondent's mayor to serve as Assistant Law Director. Further, the ordinances set forth Respondent's duties and compensation for Assistant Law Director. Together, these factors establish the existence of a formal, bilateral written agreement delineating the rights, obligations, benefits and responsibilities of the parties set forth in OAC § 145-5-15(C)(3).

D. As all elements of OAC § 145-5-15(C) are present, Petitioner was employed under a personal service contract, and thus, barred from participating in the OPERS system pursuant to ORC § 145.03.

(Emphasis sic.)

{¶ 24} At page 18 of the R & R, the hearing examiner summarizes his recommendation to the board:

Based on the findings and conclusions stated herein, I recommend that the appeal of Petitioner, James R. Silver be DENIED in its entirety and that the March 31, 2014 Senior Staff Decision of the Ohio Public Employees Retirement System finding that Petitioner James R. Silver's services as Assistant Law Director for the City of Aurora, Ohio from January 1, 1984 to December 31, 1988 [sic] was not that of a public employee be AFFIRMED. As a result, I recommend that Mr. Silver not be entitled to OPERS membership or service credit during the above-noted period.

(Emphasis sic.)

{¶ 25} 10. By letter dated February 23, 2015, pursuant to Ohio Adm.Code 145-1-11(C)(1)(c), relator timely filed objections to the R & R.

{¶ 26} 11. On August 19, 2015, the board considered the R & R of its hearing examiner, the hearing transcript and exhibits, and relator's objections to the R & R. The minutes of the August 19, 2015 board meeting are contained in the record before this court. On motion, the board unanimously voted to accept the findings of fact and conclusions of law of the R & R of the hearing examiner.

{¶ 27} 12. By letter dated August 24, 2015, the OPERS executive director, by certified mail, informed relator:

> The OPERS Retirement Board has instructed me to officially inform you of its action taken at the Board's August 19, 2015 meeting. The Board voted to accept the findings of fact and conclusions of law of the Report and Recommendation finding that Mr. Silver was not a public employee while providing services to the City of Aurora, Ohio and therefore is not eligible for OPERS membership for the period of January 1, 1984 through December 31, 1989.

{¶ 28} 13. On September 14, 2015, relator, James R. Silver, filed this mandamus action.

Conclusions of Law:

{¶ 29} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

{¶ 30} *State ex rel. City of Columbus v. Pub. Emps Retirement Bd.,* 10th Dist. No. 08AP-807, 2009-Ohio-6321 is dispositive.

{¶ 31} Pursuant to Am.Sub.H.B. No. 268, effective August 20, 1976, the Ohio General Assembly added language to R.C. 145.03 to limit the definition of a public employee so that one "who is employed under a personal service contract, does not become a member of the public employees retirement system."

{¶ 32} Further, pursuant to Substitute House Bill No. 382, effective June 30, 1991, the Ohio General Assembly deleted the above-quoted language that was added to R.C. 145.03 by Am.Sub.H.B. No. 268.

{¶ 33} This action involves the above-quoted language of former R.C. 145.03. Thus, as respondent OPERS puts it here, "R.C. 145.03, as in place August 20, 1976 through June 29, 1991," contained the exclusion" at issue here. (OPERS brief, at 2.)

{¶ 34} Supplementing former R.C. 145.03, former Ohio Adm.Code 145-5-15(C) effective December 12, 1976 provided:

> "Employed under a personal service contract" means that an individual so employed would:
>
> (1) Not appear on a public payroll.

(2) Not be eligible for sick leave, vacation, hospitalization or other fringe benefits extended to "regular" employees.

(3) Be a party to a formal bilateral written contract delineating the rights, obligations, benefits and responsibilities of both parties.

{¶ 35} *City of Columbus,* involved the same statute and administrative rule at issue here. In that case, following a hearing before a hearing examiner, the board voted to accept the findings of fact and conclusions of law contained in the R & R of the hearing examiner. That is, the board determined that four claimants were public employees during certain terms of their service to the City of Columbus. The board's final decision prompted the City of Columbus to file in this court a mandamus action challenging the board's holdings as to the four claimants.

{¶ 36} In the R & R, the hearing examiner concluded that the City of Columbus failed to show that claimants met the third requirement under the rule, i.e., that they "[b]e a party to a formal bilateral written contract delineating the rights, obligations, benefits and responsibilities of both parties." *City of Columbus* at ¶ 28. Specifically, the hearing examiner determined that "[t]he lack of delineation of the rights, obligations, benefits, and responsibilities of the parties in these contracts is both substantial and determinative." *Id.* at ¶ 29.

{¶ 37} For purposes of discussion here, the magistrate shall set forth the magistrate's discussion of Richard Pieplow in the *City of Columbus* case:

> According to the R & R, Pieplow applied to the city of Columbus for the position of real estate negotiator. He began working for the city under contract dated March 5, 1980. The contract provided that Pieplow would negotiate for the acquisition of properties, rights of entry and easements needed for various city projects. The contract set compensation at $ 6 per hour, not to exceed $ 11,280 for all services during the contract period ending January 31, 1981.
>
> According to the R & R:
>
> While the agreement thus described the kind of work Mr. Pieplow was hired to do, and provided the rate of pay and source of funding, there were a number of terms not addressed by the agreement. Notably, the agreement did not delineate whether Mr. Pieplow had the right to be a public

employee; whether he had the right to sick leave, vacation leave, hospitalization, or participation in the state's retirement system; it did not address any terms of benefits -- either to state there would be benefits, or that no benefits were being provided; it did not address whether Mr. Pieplow would be responsible to contribute to Social Security or, if he was a PERS member, to contribute the employee's share to PERS; and it did not address whether the City had the obligation to contribute the employer's share of PERS contributions for this term of service. Thus, while it was a bilateral agreement between Mr. Pieplow and the City, it did not delineate the rights, obligations, benefits and responsibilities of both parties.

In fact, Pieplow entered into a series of similar contracts between 1980 and 1986. Regarding those contracts, the hearing examiner observes:

Although the series of contracts in effect between 1980 and 1986 are silent about it, Mr. Pieplow explained that as a Real Estate Negotiator, he was provided an office, secretarial support, instructions on how to negotiate, the forms needed for these negotiations, the files used in the process of negotiations; and he was expected to work a regular forty-hour work week. He stated that if he did not work forty hours, he would not get paid for a full week's work; he got no hospitalization or sick leave benefits; he was paid by vouchers and not through the payroll system, and received a 1099 form for reporting his income to the IRS. None of these details, however, are addressed by the bilateral contract he entered into with the City.

(Footnotes omitted.)

*Id.* at ¶ 30-32.

{¶ 38} Assuming for the sake of argument that the ordinances of the City of Aurora are contracts, it is clear that the ordinances lack delineation of the rights, obligations, benefits, and responsibilities of the parties to the alleged contract.

{¶ 39} Using the magistrate's discussion of Richard Pieplow's situation in the *City of Columbus* case, the ordinances here fail to delineate whether relator had the right to be a public employee and, thus, had the right to contribute to OPERS or that he was instead

required to contribute to social security. The ordinances failed to delineate whether relator had the right to sick leave, vacation leave, and hospitalization coverage.

{¶ 40} Further, the ordinances fail to indicate whether relator was or was not to be provided an office with secretarial support.

{¶ 41} In short, the three ordinances at issue clearly fail to delineate the rights, obligations, benefits, and responsibilities of both parties. Given that conclusion, it is clear that OPERS abused its discretion in finding that relator was not a public employee.

{¶ 42} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent OPERS to vacate its August 19, 2015 decision holding that relator was not a public employee, and to enter a decision holding that relator was a public employee for the period January 1, 1984 through December 31, 1989 while employed with the City of Aurora.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).